**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DASSAULT SYSTÈMES
SOLIDWORKS CORPORATION,

Plaintiff,

v. Case No. 8:23-cv-1444-KKM-AEP

LINEAR ENGINEERING &
MANUFACTURING CORP.,
QUY MINH TANG, DIEU NGUYEN,
and AUSTIN MORRIS

Defendants.
_________________________________/

**PLAINTIFF DASSAULT SYSTÈMES SOLIDWORKS CORPORATION'S SUPPLEMENT TO ITS MOTION FOR DEFAULT JUDGMENT**

Pursuant to the Court's order (Doc. 38) allowing Plaintiff Dassault Systèmes SolidWorks Corporation ("Plaintiff" or "Dassault") to supplement its motion for Entry of Default Judgment, Dassault hereby supplements its motion for Entry of Default Judgement (Doc. 31).

## I. INTRODUCTION

Dassault diligently runs an anti-piracy program using, in part, monitoring technology that detects usage of cracked SolidWorks software. This is not a situation where Dassault just has a handful of parties to keep an eye on. This is popular software that is commonly pirated. Dassault detects *hundreds of thousands* of infringements a year in the U.S. and Canada, and determines that over a thousand parties are using pirated software each year. An application of the discovery rule is unnecessary for Dassault's breach of contract claim as each breach occurred after November 2018, well within Massachusetts' six year statute of limitations. However it is material whether the discovery rule can apply to Dassault's copyright claims as without the benefit of the rule Dassault would not receive damages for two works and dozens of infringements.

It was with this diligence that Dassault discovered the claimed infringement in November 2022, well within the Copyright Act and DMCA's statute of limitations. The Defendants installed a new version of SolidWorks, with enhanced anti-piracy technology, and greatly amped up their infringement, thereby providing additional data, in 2022 just prior to this discovery.

The running of this program is an exercise in reasonable diligence. Dassault is not being unreasonable in its diligence by deciding not to keep an eye on former infringers. Such parties rarely infringe again. It is a rare, egregious

case where parties decide to keep infringing and hide their infringement by using other computers. Former infringers are less likely to be infringing, we would be wasting resources following up on them. One cannot assume that everyone is as bad as the Defendants in this case in determining what reasonable diligence is.

Further, Dassault's researcher was aware of data in 2019 that, in hindsight with additional data from 2022 onwards, is evidence of the Defendants' infringement. However, the data was very limited, geolocation data alone in a very dense area in a building with other companies inside it. It is not a sign of unreasonable diligence to not find someone guilty of software piracy with such limited data. Doing so would lead to Dassault accusing innocent people of software piracy, a waste of our resources and a source of distress for innocent people.

Dassault's researcher from this case believes that his investigation was reasonably diligent, and he would know better than anyone. The undersigned agrees and believes that more "diligence" would lead to poorly established cases coming across his desk and a failure to detect actual infringers. If this Court does not agree, we provide a claim for damages including only infringements from the three years up to the date the complaint was filed.

The additional research for this supplement lead Dassault to discover that there are nine infringements that cannot be reasonably attributed to any of the defendants in this case. Upon analyzing the separation between pre-2020 and post-2020 infringement, Dassault's researcher discovered that infringements on Computer 3 from 2022 were done by an employee of Linear Engineering who left the company in November 2019. Dassault therefore requests that the Court consider 292 infringements by Linear Engineering rather than the 301 infringements requested in Dassault's motion for default judgement in assessing the Defendants' DMCA liability.

## II. STATEMENT OF FACTS

### A. Dassault's Anti-Piracy Program

1. To combat software piracy, Dassault includes monitoring technology in its software that sends data back to Dassault when the software has been cracked. Ex. A ¶ 2.

2. Dassault detects hundreds of thousands of uses of pirated SolidWorks software per year in the U.S. and Canada alone. Ex. A ¶ 4.

3. Mr. Garrett Traylor is a researcher who analyzes this data along with data from other sources to determine who is responsible for the detected infringement. Mr. Traylor and his team find over one thousand responsible

parties a year. Ex. A ¶ 5. Mr. Traylor's experience has given him the ability to ascertain when a reasonable person should know when software piracy is occurring. Ex. A ¶ 6.

4. Mr. Traylor has been working with Dassault analyzing this data for ten years. Ex. A ¶ 6. He is the person who has been involved in the research of Linear Engineering since 2017 and has the most knowledge regarding this research. Ex. A ¶ 8.

**B. Infringement On Two Computers Not At Issue in this Litigation.**

5. In June of 2017, Dassault's investigator Garrett Traylor discovered two computers using pirated versions of SolidWorks 2016. Ex. A ¶ 9

6. Shortly afterwards, counsel for Dassault sent a letter to Defendant Linear Engineering regarding its software piracy. Ex. A ¶ 10.

7. Linear Engineering ceased using pirated software on those two computers following this letter. Ex. A ¶ 11; Doc. 31-4, PageID 281. There appears to have been some additional infringement in 2018 but following a conversation with Dassault it ceased. Doc. 31-4, PageID 281.

8. Software pirates engage in their infringement because they do not think they will get caught. Once they find out that they can get caught their illegal

activity usually ceases. Ex. A ¶ 13. It is rare for a company to continue to use pirated software after Dassault speaks with them. Ex. A ¶ 12.

9. Mr. Traylor does not continually investigate companies that have used pirated software in the past as it is not reasonable due to the rarity of additional infringement. Ex. A ¶ 14. Continuing an investigation into a company that has already been caught would wase resources and allow other companies to get away with software piracy. Ex. A ¶ 15.

10. Mr. Traylor did not continue his investigation of Linear Engineering in 2018 because it would not be reasonable to do so. Ex. A ¶ 16.

**C. Wi-Fi Geolocation Data Detected Near Linear Engineering's Site in June 2019.**

11. In June of 2019, Mr. Traylor noticed uses of pirated SolidWorks software with Wi-Fi Geolocation data placing the infringement near Linear Engineering's site. Ex. A ¶ 18.

12. The data analyzed by Mr. Traylor bore no other information pointing to Linear Engineering. Ex. A ¶ 19.

13. Mr. Traylor found that there were two other business in the same building as Linear Engineering. Ex. A ¶ 20.

14. Mr. Traylor does not find it reasonable to rely on Wi-Fi Geolocation alone to determine whether a company is using pirated software. Ex. A ¶ 23. In dense areas, like the Tampa Bay Area where Linear Engineering is located, relying on Wi-Fi Geolocation alone would lead to innocent parties being targeted by Dassault's anti-piracy program. Ex. A ¶ 24. Doing so would waste resources, cause distress to innocent individuals, and make Dassault look bad. Ex. A ¶ 11.

15. Due to this lack of data, Mr. Traylor did not find it reasonable to determine that Linear Engineering was responsible for the infringement. Ex. A ¶ 26.

**D. Discovery of Linear Engineering's Infringement in November 2022.**

14. To combat the ever advancing capabilities of software pirates, Dassault enhances its monitoring technology to provide better data to its researchers. Ex. A ¶ 27.

15. One such enhancement was released in SolidWorks 2022, which provided unredacted email addresses detected on the infringing computers. Ex. A ¶ 27-28.

16. Linear Engineering installed SolidWorks 2022 on its computers in August of 2022. Ex. A ¶ 30.

17. Following this installation, Linear Engineering's infringement increased drastically. Ex. A ¶ 31.

18. With this new version, Defendant Tang's and Defendant Morris' computers began sending data with the email addresses "huy_t@linearengineering.com" and "austin_morris@linearengineering.com". Ex. A ¶ 32.

19. It was not until Mr. Traylor saw this data in November 2022 that he could reasonably believe that Linear Engineering was responsible for this infringement. Ex. A ¶ 33.

## III. ARGUMENT

### A. Dassault Is Entitled To All The Recovery It Sought In its Default Judgment Motion Under the Discovery Rule

#### 1. The Discovery Rule Allows For Recovery of Damages After the Plaintiff Reasonably Should Have Known of the Infringement

Courts in this district and elsewhere in the 11th Circuit consistently apply the discovery rule to copyright claims. *Thorton v. J. Jargon Co.,* 580 F.Supp.2d 1261, 1285-1286 (M.D. Fla. 2008); *Prepared Food Photos, Inc. v. Delveccio*, Case No. 23-cv-60183-BLOOM/Valle, 2023 WL 2987661, 2023 U.S. Dist. LEXIS 67252 at * 7 (S.D. Fla. Apr. 17, 2023). The discovery rule also applies to Dassault's DMCA claim. *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1025 (9th Cir.

2019) ("[The] DMCA claim arises under Title 17 of the United States Code and therefore is subject to the same statute of limitations as [the] copyright infringement claim").

Dassault may recover relief for infringement occurring more than three years before the complaint was filed so long as the claim is timely under the discovery rule. *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1331 (11th Cir. 2023). Under the discovery rule, a claim accrues when a "plaintiff learned, or in the exercise of reasonable diligence, should have learned of the alleged infringement." *Affordable Aerial Photography v. Prop. Matters United States, LLC*, 2023 U.S. Dist. LEXIS at * 6.

**2. Dassault Diligently Runs a Constantly Enhancing Anti-Piracy Program To Detect Copyright Infringement**

Dassault's efforts to police its copyrights include the use of monitoring technology embedded in SolidWorks which sends data on the computer when the software has been cracked. Ex. A ¶ 11. With this technology, Dassault detects *hundreds of thousands* of uses of pirated SolidWorks software a year in the U.S. and Canada alone. Ex. A ¶ 4. Over a thousand infringers are detected every year using a combination of this data, other data available to Dassault's researchers, and its researchers' intelligence. Ex. A ¶ 5.

The use of this technology evinces Dassault's reasonable diligence in discovering entities infringing their copyrights. Due to technological advancement, such infringement is increasingly "easier to commit, harder to detect, and tougher to litigate." *Starz Ent., LLC v. MGM Domestic TV Distrib. LLC,* 39 F.4th 1236, 1246 (9th Cir. 2022) (citing Br. Of Amici Curae The Authors Guild, Inc. and Other Artists' Rights Organizations). To keep up with the technological advancements of software pirates, Dassault constantly enhances its anti-piracy monitoring software. Ex. A ¶ 27.

**3. Dassault's Reasonable Diligence Led to the Discovery of the Claimed Infringement in November 2022.**

It would not have been reasonable to discover the claimed infringement prior to November 2022. Reasonable diligence would not have lead to the discovery of additional machines in late 2017. It is not reasonable to hawk over prior infringers because they rarely infringe after Dassault speaks with them because they rarely do so again. *See* Ex. A ¶¶ 11-16. This is a rare, egregious case where the Defendants decided to continue their infringement and evade detection by using different computers. It is not reasonable to expect Dassault to model its investigations as if everyone is as bad of an actor as the defendants here.

Reasonable diligence would not have lead to the discovery of the claimed infringement in 2019 based on the information Dassault had available to it. While in hindsight there was geolocation data that shows that Linear Engineering was

pirating software on six new computers, this does not support a conclusion that Dassault was not reasonably diligent. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 363 (2nd Cir. 2013) ("While hindsight shows that the fraud *could* have been discovered, that fact does not support the conclusion that, on a reasonable inquiry, the fraud *would* have been discovered.") In highly populated areas, accusing someone of software piracy based on geolocation data alone is not reasonable as it would lead to innocent parties being targeted. *See* Ex. A ¶¶ 18-26.

Reasonable diligence would not lead to discovery of the defendant's infringement until 2022. Defendants pirated a new version of SolidWorks and greatly increased their usage in 2022. Additional data was discovered in 2022 that led to the discovery of the claimed infringement, including Defendant Tang's and Defendant Morris' email address. Ex. A ¶¶ 27-33. It is with the additional data provided by the Defendants through their heavy use of a pirated version of SolidWorks 2022 that Dassault's investigator was able to discover the six computers Dassault is seeking damages for under the Copyright Act and the DMCA. Ex. A ¶ 33.

**B. If This Court Finds Dassault Cannot Receive Damages For Infringement Occurring More than Three Years Ago, it May Receive Up to $1,065,000 in Statutory Damages**

**1. Dassault Requests $450,000 in Damages for the Copyright Act**

**Violation if the Discovery Rule Does Not Apply**

Should this Court disagree with the above, Dassault would still be entitled to its damages for infringements occurring up to three years before the complaint was filed. *Nealy*, 60 F.4th at 1330 ("[U]nder the injury rule, a copyright plaintiff's claim accrues when the harm, that is the infringement, occurs, no matter when the plaintiff learns of it.")

If the discovery rule did not apply, Dassault could receive **$450,000** in statutory damages for copyright infringement. In its motion for entry of default judgment, Dassault claimed five infringed works. Three works were infringed after June 28, 2020. Ex. A ¶ 34 . Per 17 U.S.C. § 504(c), Dassault may receive up to $450,000 in statutory damages. This is less than five times the unpaid license fee it calculated in its default judgement motion ($494,575). Therefore, Dassault would request the maximum statutory damages if the discovery rule did not apply, **$450,000**.[1]

**2. Dassault Requests $637,500 in DMCA Damages If the**

[1] There is no law saying the Court is required to only consider unpaid license fees within the statute of limitations when it uses its discretion to decide what statutory damages to award. This Court should consider the older infringement as the longstanding infringement is egregious. However, if the Court would only like to consider the unpaid license fees going back three years from the Complaint, we provide the unpaid license fee calculation starting in June 28, 2020 below.

**Discovery Rule Does Not Apply**

If the Discovery Rule does not apply, Dassault respectfully requests $2,500 for each of the 246 infringements (Ex. A ¶ 38) occurring after June 28, 2020, **$615,000**. This is a decrease from the Dassault sought $752,500 for 301 infringements.

Upon further review of the data, Dassault has determined that nine of the claimed infringements cannot be attributed to Linear Engineering or the other defendants. An employee who left Linear Engineering in December 2019 used the pirated software nine times in 2022. Ex. A ¶¶ 35-38. Therefore, Dassault now requests that the court consider 292 infringements instead of 301 if the discovery rule is found to apply for its DMCA claim.

### 3. If This Court Wishes To Only Consider the Unpaid License Fees Since June 28, 2020, the Total is $65,382

The Court is not required to limit its consideration of what statutory damages to award to the unpaid license fees stemming from infringement occurring after June 28, 2020. But it may in its discretion. If the Court wishes to so limit its consideration, Dassault presents its unpaid license fees since June 28, 2020 in Table 1 below.

| Computer Number | Product | Years | License Fee | Yearly Subscription Cost | Unpaid Total (License Fee + Years * Yearly Subscription Cost) |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | SolidWorks Standard | 3 | $4,195 | $1,295 | $8,080 |
| 2 | SolidWorks Standard | 3 | $4,195 | $1,295 | $8,080 |
| 2 | Flow Simulation | 3 | $14,695 | $3,919 | $26,452 |
| 5 | SolidWorks Premium | 1 | $8,395 | $1,995 | $10,390 |
| 6 | SolidWorks Premium | 2 | $8,395 | $1,995 | $12,380 |
| | | | | **Total:** | **$65,382** |

Table 1

### C. All Claimed Breaches of Contract Are Well-Within Massachusetts's Six Year Statute of Limitations

Under Massachusetts law a contract claim may be brought six years after the breach occurs. "Contract claims generally accrue at breach." *Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 146 (1st Cir. 2004). "The general rule is that a contract action must be brought within six years after the cause of action accrues… The action accrues at the time the contract is breached." *Barber v. Fox*, 36 Mass.App.Ct. 525, 527 (1994).

Defendants breached the license agreement at least each time they used the software. Doc. 1, ¶ 141, 150. The earliest use claimed by Dassault in its breach of

contract damages was in November 2018. Doc. 31-1 ¶ 4, Table 1. Massachusetts' statute of limitations covers ever breach that Dassault is claiming damages for.

## IV. CONCLUSION

The Discovery Rule allows for recovery of all claimed damages under the Copyright Act and the DMCA. If the Court finds otherwise, we have submitted our request for damages covering only the past three years of infringement. The damages claimed from Dassault's license agreement breach all fall within Massachusetts' six-year statute of limitations.

Dated: May 1, 2024

*/s/ Jeremiah J. Foley*
Glenn E. Forbis *(Pro Hac Vice)*
Jeremiah J. Foley *(Pro Hac Vice)*
Harness, Dickey & Pierce PLC
5445 Corporate Drive, Suite 200
Troy, MI 48098
248-641-1600
gforbis@harnessip.com
jfoley@harnessip.com

*Lead Counsel for Plaintiff*

Erik Johanson, Esq.
Florida Bar No. 106417
Joseph R. Boyd, Esq.
Florida Bar No. 1039873
ERIK JOHANSON PLLC
3414 W Bay to Bay Blvd
Suite 300
Tampa, Florida 33629
(813) 210-9442
erik@johanson.law

jr@johanson.law
ecf@johanson.law

*Local Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was thereby caused to be served on Defendant by and through its counsel of record.

/s/ Jeremiah Foley
Jeremiah J. Foley
HARNESS, DICKEY & PIERCE, P.L.C.
5445 Corporate Drive, Suite 200
Troy, MI 48098

*Of Counsel*

28270307.1